United States District Court
Southern District of Texas
**ENTERED**
April 27, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEREK WILLIAM BROWN,                §
SPN #01373004,                      §
                                    §
          Plaintiff,                §
                                    §
v.                                  §        CIVIL ACTION NO. H-20-0725
                                    §
LIEUTENANT LOGAN BOWERS,            §
et al.,                             §
                                    §
          Defendants.               §

## MEMORANDUM OPINION AND ORDER

The plaintiff, Derek William Brown (SPN #01373004, former TDCJ #1987097), is currently in custody as a pretrial detainee at the Harris County Jail. Brown has filed a Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), concerning two incidents that occurred when he was previously incarcerated by the Texas Department of Criminal Justice ("TDCJ"). At the court's request Brown has filed Plaintiff's More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 13), which provides additional details about his allegations; and the State Attorney General's Office has provided an *Amicus Curiae* Martinez Report with administrative records under <u>Martinez v. Aaron,</u> 570 F.2d 317 (10th Cir. 1987) ("Martinez Report") (Docket Entry No. 18). After considering all of the pleadings and exhibits in the record, the court will dismiss this action for the reasons explained below.

## I. Background

Brown was released from TDCJ on May 30, 2019, after serving a prison sentence that he received following a conviction for third-degree felony stalking in 2014.[1]  Brown is currently confined in the Harris County Jail as the result of "second degree felony stalking" charges,[2] which were filed against him in state court after his arrest on August 14, 2019.[3]

Brown alleges that his civil rights were violated in February of 2019 when correctional officers employed by TDCJ used excessive force against him during two incidents that occurred within hours of each other at a state prison facility in Huntsville.[4]  Records reflect that force was used against Brown during incidents that occurred at 8:16 a.m. and 1:01 p.m. on February 7, 2019, when Brown was assigned to administrative segregation at the Estelle High Security Unit.[5]  Brown was in administrative segregation because of

---

[1]Plaintiff's MDS, Docket Entry No. 13, pp. 3, 9.  For purposes of identification, all page numbers refer to the pagination inserted by the court's electronic filing system, CM/ECF.

[2]Letter from Derrick Brown, Docket Entry No. 6, p. 3.

[3]Plaintiff's MDS, Docket Entry No. 13, p. 2.

[4]Complaint, Docket Entry No. 1, pp. 4-5.

[5]Brown alleges that the incidents occurred at 8:30 a.m. and 11:15 a.m. on February 5, 2019.  See Complaint, Docket Entry No. 1, p. 5.  Records of the administrative investigation reflect, however, that the incidents occurred at 8:16 a.m. and 1:01 p.m. on February 7, 2019.  See TDCJ Use of Force Report, Exhibit D to Martinez Report, Docket Entry No. 18-4, p. 9; TDCJ Use of Force Report, Exhibit F to Martinez Report, Docket Entry No. 18-6, p. 9.

-2-

previous incidents in which he violated prison rules by assaulting a staff member and creating a weapon.[6]  Each use of force is summarized below based on the pleadings and the available records.

## A.    The First Use of Force

Brown alleges that the first use of force ensued after two John Doe correctional officers entered his cell with handcuffs and woke him abruptly, which resulted in an altercation after one of the officers slapped Brown in the face.[7]  According to the TDCJ Use of Force Report for the incident, officers entered Brown's cell at 8:16 a.m. on February 7, 2019, after he failed to respond to staff.[8]  As the officers placed restraints on Brown he reportedly spit on one of them (Officer Naccarato) and began to resist.[9] Brown acknowledges that he "began to fight" with the officers, explaining that he was defending himself.[10]  In response, officers placed Brown on the floor and summoned a video camera to document the remainder of the incident.[11]

---

[6]Plaintiff's MDS, Docket Entry No. 13, pp. 3-4.

[7]Id. at 10; TDCJ Use of Force Report, Exhibit D to Martinez Report, Docket Entry No. 18-4, pp. 9-10.

[8]TDCJ Use of Force Report, Exhibit D to Martinez Report, Docket Entry No. 18-4, p. 9.

[9]Id.

[10]Plaintiff's MDS, Docket Entry No. 13, pp. 10, 11.

[11]TDCJ Use of Force Report, Exhibit D to Martinez Report, Docket Entry No. 18-4, p. 9.

-3-

A video recording of the incident shows that when the camera operator arrived Brown was restrained in handcuffs and pinned to the floor by two officers, who then left the cell (F-wing cell 232) after Brown agreed to comply with their orders.[12]   The officers removed Brown's restraints after he obeyed orders to stand and place his hands through the food-tray slot of the door to his cell.[13]  A nurse arrived at Brown's cell and examined him after his restraints were removed.[14]  Brown complained of facial tingling and hand pain, but the nurse did not observe any injury.[15]  The nurse clarified on the video that she observed some redness on Brown's wrists from the hand restraints, but no broken skin or other injury.[16]  Still photos that were taken shortly after the incident show that Brown was smiling and that he had no injuries to his head or face.[17]

Brown was charged with a disciplinary offense for spitting in an officer's face during the incident that prompted the first use

---

[12]Use of Force Video ("Video"), Exhibit E to Martinez Report, Docket Entry No. 18-5.

[13]Id.

[14]Id.

[15]TDCJ Use of Force Report, Exhibit D to Martinez Report, Docket Entry No. 18-4, p. 25.

[16]Video, Exhibit E to Martinez Report, Docket Entry No. 18-5.

[17]TDCJ Use of Force Report, Exhibit D to Martinez Report, Docket Entry No. 18-4, pp. 37-39.

-4-

of force on February 7, 2019.[18]   Brown was convicted of those
charges and reduced in classification status as a result of the
incident.[19]

## B.   The Second Use of Force

The second use of force occurred when officers approached
Brown's cell later in the day and ordered him to accompany them to
the Classification Department.[20]   Brown acknowledges that he refused
the order and instead demanded to be taken to see a "Safe Prisons"
official, referencing the Prison Rape Elimination Act ("PREA").[21]
According to the TDCJ Use of Force Report, which reflects that the
incident occurred at 1:01 p.m. on February 7, 2019, Captain
Applewhite authorized Lieutenant Bowers to administer a chemical
agent after Brown refused to comply with repeated orders to submit
to a strip search and restraints before being moved to a new cell.[22]

The video recording of the incident shows that Lieutenant
Bowers warned Brown twice before administering a two-second blast

--------

[18]TDCJ Offense Report, Exhibit D to Martinez Report, Docket
Entry No. 18-4, pp. 35-36.

[19]Plaintiff's MDS, Docket Entry No. 13, p. 5; TDCJ Disciplinary
Record, Case No. 20190141746, Exhibit C to Martinez Report, Docket
Entry No. 18-3, pp. 3, 7.

[20]Plaintiff's MDS, Docket Entry No. 13, p. 6.

[21]Id.

[22]TDCJ Use of Force Report, Exhibit F to Martinez Report,
Docket Entry No. 18-6, pp. 3, 7.

-5-

of chemical agent through the food-tray slot of Brown's cell.[23]
After a few minutes Brown agreed to submit to a strip search and
restraints.[24]  Officers then escorted Brown to the unit infirmary
where a nurse briefly examined him in the hallway.[25]  The video
reflects that Brown was not in any distress as he was being
escorted by the officers.[26]  When Brown saw the nurse he reported
no injury and he appeared to have no other difficulty after his
brief exposure to the chemical agent.[27]  After the examination Brown
was escorted to a different cell (D-wing cell 228) without further
incident.[28]

Brown was charged with refusing to submit to a strip search
and application of hand restraints as well as failing to obey
orders during the incident.[29]  Brown was convicted of those
disciplinary charges and lost privileges as punishment.[30]

---

[23]Use of Force Video ("Video"), Exhibit G to Martinez Report,
Docket Entry No. 18-7.

[24]Id.

[25]Id.

[26]Id.

[27]Id.; see also TDCJ Use of Force Report, Exhibit F to Martinez
Report, Docket Entry No. 18-6, pp. 18-21.

[28]Video, Exhibit G to Martinez Report, Docket Entry No. 18-7.

[29]TDCJ Offense Report, Exhibit F to Martinez Report, Docket
Entry No. 18-6, p. 24 (describing the charges).

[30]Plaintiff's MDS, Docket Entry No. 13, p. 5; TDCJ Disciplinary
Record, Case Nos. 20190141743 and 20190141746, Exhibit C to
Martinez Report, Docket Entry No. 18-3, pp. 3, 7.

Invoking 42 U.S.C. § 1983, Brown sues Lieutenant Bowers, Captain Applewhite, and the John Doe officers who participated in the use-of-force incidents that occurred on February 7, 2019.[31]  He seeks unspecified relief for the violation of his rights under the Eighth Amendment.[32]

## II.  <u>Standard of Review</u>

Brown filed this civil action while incarcerated, and he has been granted leave to proceed <u>in forma pauperis.</u>  Under these circumstances the court is required by the Prison Litigation Reform Act (the "PLRA") to scrutinize the claims and dismiss the case, in whole or in part, if it determines that the Complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); <u>see also</u> 28 U.S.C. § 1915(e)(2)(B).

The Supreme Court has held that a complaint filed by a litigant who proceeds <u>in forma pauperis</u> may be dismissed as frivolous "where it lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams,</u> 109 S. Ct. 1827, 1831-32 (1989).  The Fifth Circuit has clarified that a filing is properly dismissed as "frivolous" if it "lacks an arguable basis in law or fact or if

---

[31]Complaint, Docket Entry No. 1, pp. 2-3.

[32]<u>Id.</u> at 5.

there is no realistic chance of ultimate success." Henthorn v. Swinson, 955 F.2d 351, 352 (5th Cir. 1992); see also Geiger v. Jowers, 404 F.3d 371, 373 (5th Cir. 2005) ("A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact.").

To assist with screening the Complaint in this case the court requested a Martinez Report, which is a procedure that asks prison officials to investigate the facts surrounding a prisoner's civil rights claim and construct an administrative record. See Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). The use of a Martinez Report has been approved by the Fifth Circuit in Cay v. Estelle, 789 F.2d 318, 323 n.4 (5th Cir. 1986), and Parker v. Carpenter, 978 F.2d 190, 191 n.2 (5th Cir. 1992), as a tool to supplement the pleadings and assist the court in making a determination of frivolity under 28 U.S.C. § 1915(e)(2)(B). See Norton v. Dimazana, 122 F.3d 286, 292-93 (5th Cir. 1997). The Attorney General's Office has filed an advisory confirming that Brown was provided with a copy of the Martinez Report and that he had an opportunity to review the use-of-force video exhibits at the Harris County Jail.[33]

In conducting its review of the pleadings the court is mindful that the plaintiff proceeds pro se in this case. Courts are

---

[33]The Office of the Attorney General's Second *Amicus Curiae* Advisory Regarding Service of *Martinez* Report Exhibits, Docket Entry No. 25, p. 1.

required to give a <u>pro</u> <u>se</u> litigant's contentions, however
inartfully pleaded, a liberal construction.   <u>See Erickson v.</u>
<u>Pardus,</u> 127 S. Ct. 1081, 2200 (2007) (citing <u>Estelle v. Gamble,</u> 97
S. Ct. 285, 292 (1976)); <u>see also Haines v. Kerner,</u> 92 S. Ct. 594,
595-96 (1972) (noting that allegations in a <u>pro se</u> complaint,
however inartfully pleaded, are held to less stringent standards
than formal pleadings drafted by lawyers).  Even under this lenient
standard a plaintiff must allege more than "'labels and
conclusions' or 'a formulaic recitation of the elements of a cause
of action'[.]" <u>Ashcroft v. Iqbal,</u> 129 S. Ct. 1937, 1949 (2009)
(quoting <u>Bell Atlantic Corp. v. Twombly,</u> 127 S. Ct. 1955, 1965
(2007)).  To state a claim for which relief may be granted, "[a]
complaint must be plausible on its face based on factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." <u>Whitaker v.</u>
<u>Collier,</u> 862 F.3d 490, 497 (5th Cir. 2017) (internal quotation
marks and citations omitted).

### III.  <u>Discussion</u>

Claims of excessive use of force in the prison context are
governed by the Eighth Amendment, which prohibits cruel and unusual
punishment, <u>i.e.,</u> the "unnecessary and wanton infliction of pain."
<u>Wilson v. Seiter,</u> 111 S. Ct. 2321, 2323 (1991) (quoting <u>Estelle v.</u>
<u>Gamble,</u> 97 S. Ct. 285, 291 (1976)).  Not every malevolent touch by
a prison guard gives rise to a constitutional violation under the

Eighth Amendment.  See Hudson v. McMillian, 112 S. Ct. 995, 1000 (1992) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")).  The Constitution excludes from recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson, 112 S. Ct. at 1000 (internal citation and quotation omitted).

To prevail on an excessive-use-of-force claim under the Eighth Amendment a plaintiff must establish that force was not "'applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm.'"  Eason v. Holt, 73 F.3d 600, 601-02 (5th Cir. 1996) (citing Hudson, 112 S. Ct. at 998).  Relevant factors to consider in evaluating an excessive-use-of-force claim include:  (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response.  See Hudson, 112 S. Ct. at 999; Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999).

Video recordings of the two incidents that form the basis of the Complaint show that limited force was used by officers after

Brown — by his own admission — behaved disruptively, resisted their efforts to restore order, and refused to obey their commands.  More importantly, the administrative records and video recordings confirm that Brown was examined by a nurse after each incident and that she observed no physical injury other than redness on his wrists from the restraints that were applied during the first use of force.  Additional records provided with the Martinez Report confirm that Brown did not seek any further medical care following the use-of-force incidents that occurred on February 7, 2019.[34]

To be actionable under the Eighth Amendment, an inmate's injury need not be significant, but must be more than de minimis. See Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997) (holding that a sore, bruised ear lasting for three days was de minimis and did not meet the physical injury requirement found in the PLRA).[35]  To the extent that Brown complains that his wrists hurt from handcuffs that were applied too tightly, the Fifth Circuit has held that minor, incidental injuries that occur in connection with the use of handcuffs do not give rise to a constitutional claim for excessive force.  See Glenn v. City of

---

[34]TDCJ Medical Records for Derek Brown, TDCJ #01987097, for the time period of January 1, 2019, through April 30, 2019, Exhibit A to Martinez Report, Docket Entry No. 18-1, pp. 1-114.

[35]The PLRA precludes an action by a prisoner for compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  42 U.S.C. § 1997e(e).

Tyler, 242 F.3d 307, 314 (5th Cir. 2001) (stating that "handcuffing too tightly, without more, does not amount to excessive force"); see also Lockett v. New Orleans City, 607 F.3d 992, 999 (5th Cir. 2010) (per curiam) (citing Glenn, 242 F.3d at 314); Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007) (rejecting as de minimis the plaintiff's claim "that the deputies twisted her arms behind her back while handcuffing her, 'jerked her all over the carport,' and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms")); Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005) (concluding that the plaintiff's allegation that he suffered "acute contusions of the wrist" and psychological injury from being handcuffed were insufficient to state a claim of excessive force).

Brown does not allege facts showing that officers used force for malicious purposes; and the pleadings, as supplemented by the Martinez Report, do not demonstrate that Brown complained of or sought treatment for an injury that was more than de minimis. As a result, Brown does not demonstrate that excessive force was used against him in violation of the Eighth Amendment or that a constitutional violation occurred. Accordingly, his Complaint will be dismissed as frivolous and, alternatively, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

## IV.   Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1.   Derek William Brown's Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983 (Docket Entry No. 1) is **DISMISSED WITH PREJUDICE** as frivolous and, alternatively, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

2.   The dismissal will count as a **STRIKE** for purposes of 28 U.S.C. § 1915(g).

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties of record.  The Clerk shall also provide a copy to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

**SIGNED** at Houston, Texas, on this 27th day of April, 2021.

_____

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-13-